**In re THE MEDICINE SHOPPE d/b/a KMK Pharmacy Enterprises, Inc., Debtor.**

**Bankruptcy No. 95 B 15972.**

United States Bankruptcy Court, N.D. Illinois.

Jan. 14, 1997.

Bruce Konzelman, Codo Bonds Zumstein & Konzelman, Joliet, IL, for trustee.

John E. Gierum, Di Monte Schostok & Lizak, Park Ridge, IL, William F. Scannell, Blue Island, IL, for claimant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING TRIAL ON TRUSTEE'S OBJECTION TO BLAESING CLAIM

JACK B. SCHMETTERER, Bankruptcy Judge.

The Medicine Shoppe d/b/a KMK Pharmacy Enterprises, Inc. ("KMK" or "Debtor") filed this bankruptcy case on August 7, 1995, under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Robert Blaesing ("Blaesing" or "Claimant") filed a claim herein in the amount of $15,469.70, alleging that his claim is secured. Deborah K. Ebner ("Ebner" or "Trustee"), the duly appointed interim Chapter 7 Trustee, objected to the secured status of this claim. The matter was set for trial. Trustee's Exhibits 1, 2, 3, and 4 were admitted into evidence without objection, as was a Stipulation of Fact entered into by the parties and filed herein. Both sides then rested, and final argument was presented. Based thereon, the Court now makes and enters the following Findings of Fact and Conclusions of Law pursuant to which by separate order the secured claim of Blaesing is allowed and the Trustee's objections thereto are overruled.

### FINDINGS OF FACT

On or about October 25, 1993, pursuant to a loan, Debtor executed a promissory note in favor of First Midwest Bank ("First Midwest") with a maturity date of November 20, 1996 (the "Note"). As security for the Note, Debtor granted a blanket security interest in all of its property which included inventory, equipment, accounts receivable, and general intangibles. Also on or about October 25, 1993, the Claimant Blaesing (who was then an officer of the Debtor) executed his personal guaranty of Debtor's Note to the benefit of First Midwest. Under this guaranty, First Midwest had a right of setoff against Claimant's accounts at First Midwest.

As stated, on August 7, 1995, Debtor filed a petition for relief under Chapter 7. Claimant was not listed in the bankruptcy schedules as a creditor holding security. Rather, Schedule D shows two secured creditors, Medicine Shop International, in the amount of $22,634.33, with a security interest in inventory, accounts receivable and fixtures, and First Midwest with a junior security interest in inventory, fixtures and accounts receivable. The schedules listed assets, including inventory, accounts receivable, and fixtures in the approximate amount of $52,739.40. Currently, the Trustee has liquidated all the inventory, assets, fixtures, and accounts receivable and holds funds therefrom in the approximate amount of $50,000.

On or about August 16, 1995, Claimant was a depositor at First Midwest and maintained savings account No. 244167. On that date, First Midwest declared a default on the Note, debited Blaesing's account no. 244167 in the amount of $15,469.70, and applied that amount to payment on the Note. The amount due on the Note on that date was $15,469.70, and as a result of the account debit, the balance due on the Note became zero.

First Midwest's action by debiting the account and transferring the funds was a unilateral action taken by the Bank and was done without prior notification or warning to the Claimant. First Midwest and Claimant had no prior conversations or negotiations regarding the August 16, 1995, transfer. Claimant first learned of the transfer via a long distance phone call from a bank officer

while vacationing in Pennsylvania. Claimant returned to Illinois and contacted First Midwest on or about August 21, 1995. At that time, a discussion ensued about what later became a Loan Sale Agreement. William Scannell, Claimant's attorney, contacted First Midwest and negotiated the terms of the Loan Sale Agreement. First Midwest prepared the agreement and sent it to Scannell on September 6, 1995. On or about September 13, 1995, Claimant executed three copies of the agreement which Scannell returned to the bank for execution. On or about September 19, 1995, the bank executed two copies of the agreement and returned them to Scannell. Pursuant to that Agreement, a related of Sale and Assignment of Loan was executed on September 25, 1995 but purports to be effective on August 16, 1995, the date that Blaesing's account was deleted. Pursuant to these documents, First Midwest assigned to Blaesing all its rights in the Debtor's Note and its right in all collateral documents related thereto.

First Midwest did not file a claim in the bankruptcy proceeding. On October 2, 1996, Blaesing filed a claim in the amount of $15,-469.70, listed as Claim No. 2.[1] His proof of claim states that the claim arose on August 16, 1995, the post-petition date of the transfer. Claimant asserts that he holds a secured claim because he purchased the note and security interest of First Midwest pursuant to the Bill of Sale and Assignment of Loan. Claimant argues alternatively that, pursuant to 11 U.S.C. § 509, he has been subrogated as to First Midwest's rights and security interest.

## CONCLUSIONS OF LAW

### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core pro-

ceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### Discussion

Pursuant to Fed.R.Bankr.P. 3001(f), a validly filed proof of claim constitutes *prima facie* evidence of the claim's validity. A rebuttable presumption of validity arises from a properly filed claim. *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991); *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988). The initial burden falls upon the objector to produce some evidence to overcome this rebuttable presumption. *In re Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied*, (1993). The burden then shifts back to the claimant to produce evidence meeting the objections and establishing the claim. *In re Chapman*, 132 B.R. 132, 143 (Bankr.N.D.Ill.1991). While the burden of going forward shifts during the claims objection process, the ultimate burden of persuasion is always on the claimant to prove the claimed entitlement. *In re Holm*, 931 F.2d at 623; *In re Chapman*, 132 B.R. at 143.

Claimant filed a proof of claim in the amount of $15,469.70, alleging the claim to be secured as a result of an alleged purchase and assignment of a loan described above. The Trustee opposes the secured status of this claim, arguing that the Bank's security interest in Debtor's inventory, equipment, accounts receivable, and general intangibles was extinguished prior to the assignment, thus leaving nothing to assign and no consideration for the assignment. Claimant argues that the documents submitted reflect that the bank intended to transfer its security interest to claimant.

Alternatively, Claimant argues, pursuant to Bankruptcy Code § 509, that a guarantor is subrogated to all rights of the original creditor upon payment of the original debt. If that is correct, regardless of the validity of the written loan assignment or the date of its

---

1. The Trustee alleges without dispute by Claimant that Blaesing filed Claim No. 3. However, both the file and the claims register clearly reflect that Blaesing's claim is listed as Claim No. 2.

effect, he holds a secured claim based on his statutory rights of subrogation.

The doctrine of equitable subrogation, codified in § 509,[2] has its origins in equity where the rule is that "one compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." *In re Chateaugay Corp.*, 89 F.3d 942, 947 (2nd Cir.1996); *Matter of Bugos*, 760 F.2d 731, 733 (7th Cir.1984) (*citing American Surety Co. v. Bethlehem Nat'l Bank*, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941)). Section 509(a) of the Code states that, except as otherwise provided, "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a). The exceptions provided in §§ 509(a) and (b) are not relevant to this proceeding. Although § 509 specifically refers to "co-debtors," the provision applies to other entities which might be jointly or secondarily liable on the debt such as a surety, guarantor, or comaker. 3 *Collier on Bankruptcy* ¶ 509.01 (Lawrence P. King ed., 15th ed.1996); *See also* S.Rep. No. 989, 95th Cong., 2d Sess.1978, 1978 U.S.C.C.A.N. 5787; *In re Slamans*, 69 F.3d 468, 473 (10th Cir. 1995).

> Certain entities may be liable to a creditor along with the debtor. A guarantor, a surety, a co-signer, a joint venturer, a joint tort-feasor, an endorser and perhaps other persons may have a legal obligation to pay the creditor. A person who gives the creditor collateral for the obligation the debtor has a liability for may likewise be in a

position of having to satisfy the creditor. Bankruptcy law does not create such liabilities nor does it create the right of such person to reimbursement from the debtor. They are a matter of non-bankruptcy law. *The bankruptcy law provides a general rule that to the extent that such person or entity satisfies the creditor he or she becomes subrogated to the right the creditor has against the debtor.*

*Bugos*, 760 F.2d at 734 (emphasis added).

Subrogation under § 509(a) allows a guarantor, who pays a debt for which a debtor is primarily liable, to assume the creditor's rights. These rights include any rights to priority distribution or secured status to which the subrogor's claim was entitled. *In re Erin Food Services, Inc.*, 980 F.2d 792, 803 n. 19 (1st Cir.1992) (*citing In re Wingspread Corp.*, 116 B.R. 915, 930–31 (Bankr. S.D.N.Y.1990) (priority attaches to claim, not to creditor or claimant)).

While subrogation under § 509(a) is similar to the doctrine of equitable subrogation, it is not identical. Subrogation under § 509(a) requires three basic elements. *In re Slamans*, 69 F.3d 468, 473 (10th Cir.1995). Under the Bankruptcy Code, a guarantor or surety is subrogated to the rights of a creditor if it: (1) "is liable with the debtor on" (or has secured); (2) "a claim of a creditor against the debtor;" and (3) "pays such claim." *Id.* (*citing* 11 U.S.C. § 509); *see also Bugos*, 760 F.2d at 734. However, other circuits have split as to whether a co-debtor seeking subrogation under § 509(a) must also satisfy the more stringent five-part equitable subrogation test. *Slamans*, 69 F.3d at 472, n. 2 (*citing Photo Mechanical Servs., Inc. v. E.I. Dupont De Nemours & Co., Inc.*

---

**2.** (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

    (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—

      (A) allowed under section 502 of this title;

      (B) disallowed other than under section 502(e) of this title; or

      (C) subordinated under section 510 of this title; or

    (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor, on or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise. § 11 U.S.C. 509.

*(In re Photo Mechanical Servs., Inc.),* 179 B.R. 604, 618–19 (Bankr.D.Minn.1995) (collecting cases)). Equitable subrogation is generally appropriate where: (1) payment was made to protect the subrogee's own interest; (2) repayment by the subrogee was not voluntary; (3) the debt paid was one for which the subrogee was not primarily liable; (4) the entire debt was paid; and (5) subrogation will not injure the rights of others. *Feldhahn v. Feldhahn,* 929 F.2d 1351, 1353–54 (8th Cir.1991) (*citing In re Leedy Mortgage Co.,* 111 B.R. 488, 492 (Bankr.E.D.Pa. 1990)); *see also In re Southwest Equipment Rental, Inc.,* 193 B.R. 276, 284 (E.D.Tenn. 1996) (*citing In re Flick,* 75 B.R. 204 (Bankr. S.D.Cal.1987)); *In re Carley Capital Group,* 119 B.R. 646, 649 (W.D.Wis.1990).

█ Applying either of the foregoing standards, Claimant is entitled to be subrogated to First Midwest's secured claim under § 509(a). The debit was made pursuant to Claimant's legal obligations under the terms of his guarantee. He did not voluntarily repay the Note. In fact, Claimant was out of the state when the debit occurred and did not learn of the transfer until after it was completed. Claimant's liability on the Note was as guarantor; he was not primarily liable. The debit and transfer repaid the entire balance of the Note. Moreover, subrogating Claimant to First Midwest's position will not cause improper injury to anyone, certainly not to Debtor. Debtor provided for the secured debt in its original bankruptcy schedules, and Debtor does not dispute that Claimant repaid the Note or the amount of the repayment. Moreover, failure to allow § 509(a) subrogation would result in a windfall to Debtor and its unsecured creditors and would thereby disrupt the Code's priority scheme. If that were the result, the secured claim would be extinguished and Claimant would be required to share distribution pro rata with the unsecured, nonpriority claimants. Section 509(a) serves the purpose of preventing such inequity.

█ Trustee argues that Claimant has a right to file only an unsecured claim for reimbursement. However, §§ 502 and 509 of the Bankruptcy Code do permit a guarantor to elect between a claim for reimbursement under § 502 or subrogation under § 509. 3 *Collier on Bankruptcy,* § 509.03[1] (15th Ed.1996); *Erin Food Services,* 980 F.2d at 803 n. 19; *Credit Alliance Corp. v. Williams,* 851 F.2d 119, 121 (4th Cir.1988); *In re Richardson,* 193 B.R. 378, 380–81 (D.D.C.1995). Thus, Claimant may elect to proceed here under § 509(a).

The Trustee failed to challenge Claimant's assertion of rights under § 509(a), nor did the Trustee even mention the section in its briefs. Rather, she argues that, upon debiting of Claimant's account and the resulting full payment of the note, First Midwest's security interest was extinguished. Thus, argues the Trustee, Claimant has no shoes into which he may step. Trustee cites to a number of state and federal cases as well as other authority for this principal. This may well be the rule under state law; however, Congress specifically created a section of the Bankruptcy Code to deal with the situation presented here. The Trustee overlooks the power of § 509. By its terms, § 509(a) only applies where the note has been paid by a codebtor, surety, or guarantor. *See* 11 U.S.C. § 509(a) ("to the extent of such payment"), and § 509(c) (guarantor's claim is subordinated to creditors "until such creditor's claim is paid in full"). Where the guarantor has paid the claim, the guarantor is subrogated by statute to rights of the creditor. Thus, the Trustee's state law arguments cannot defeat the express provisions of the Bankruptcy Code.

The Trustee also argues that certain inconsistencies in the documents require an investigation into the intent of the parties. She points out that the documents purport to be effective on August 16, 1995, but were not signed until September 25, 1995, and that the amount of the transfer consisted of the total amount due on the Note as of August 16, 1995. She therefore contends that the transfer occurred August 16, not September 25, 1995, when the documents were executed. From this, the Trustee concludes that First Midwest's intent when it debited Blaesing's account on August 16, 1995, could not have been to sell and assign the Note. However, in light of § 509(a), the parties' intentions are

not dispositive. Thus, the Trustee's arguments are not relevant.

Finally the Trustee argues that her powers under § 544 as a hypothetical judgment lien creditor defeat Claimant's rights. Section 544 provides:

> The trustee shall have, *as of the commencement of the case*, ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a creditor that extends credit to the debtor *at the time of the commencement of the case*, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1) (emphasis added). Trustee argues that execution of the purported assignment on September 25, 1995, was an attempt to affect rights of the Trustee. However, at the time of the commencement of the bankruptcy on August 7, 1995, there was a valid secured claim on Debtor's inventory, equipment, accounts receivable and general intangibles. At that time it was held by First Midwest. The debiting of Claimant's account and the payment of the Note occurred post-petition on August 16, 1995. By its terms, § 544 does not apply to a guarantor's subrogated rights arising out of post-petition activity. Moreover, § 509(a) expressly provides in situations such as this that, where a guarantor repays a debt, the guarantor succeeds to the rights of the creditor. Thus, Claimant properly holds an allowed secured claim in the amount of $15,469.70.

## *CONCLUSION*

For reasons set forth above, by order to be separately entered, the Trustee's objection to the secured claim of Robert Blaesing, Claim No. 2 is overruled. Blaesing's Claim No. 2 will be allowed as filed in the amount of $15,469.70, and fully secured as filed.