**In re Pearlie KNOX, Debtor.**

**Pearlie Knox, Plaintiff,**

v.

**Sunstar Acceptance Corporation, Defendant.**

**Bankruptcy No. 97 B 25819.**
**Adversary No. 98 A 00815.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 1, 1999.

Daniel Edelman, Cathleen Combs, James Latturner, Tara Goodwin, Edelman & Combs, Chicago, IL, for Plaintiff.

Craig Varga, Jonathan Ledsky, Anne Viner, Varga Berger Ledsky Hayes & Casey, Chicago, IL, for Defendant.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS

JACK B. SCHMETTERER,
Bankruptcy Judge.

This Adversary case relates to the bankruptcy case filed by plaintiff-debtor Pearlie Knox ("Knox") under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Knox filed this as a purported class action for herself and others allegedly harmed by Sunstar Acceptance Corporation's ("SAC") or ("Defendant") allegedly common practice of filing secured claims in Chapter 13 cases knowingly valuing the vehicular security higher than its actual value. The pending Amended Adversary Complaint—Class Action ("Complaint") is pleaded in three counts. Count I rests upon 11 U.S.C. § 105 and seeks injunctive relief to stop the asserted practice. Knox also seeks "sanctions against SAC for its wrongful conduct," an order compelling SAC to amend its proofs of claims, a refund of overpayments and expenses, and an award of attorney's fees. Count II asserts that SAC's conduct has been deceptive and violated the Illinois Consumer Fraud Act. Count III rests on a theory of unjust enrichment.

SAC moved to dismiss the Complaint. Pending ruling on this dismissal motion, briefing was stayed on Plaintiff's motion for class certification. For the following reasons, the Motion to Dismiss will be granted as to all Counts without prejudice to Plaintiff. Debtor's motion, if any, is to be filed in the bankruptcy case under Fed. R.Bankr.P. 9011, and Knox's pending motion for class certification will be stricken.

### *Standards on Motion to Dismiss*

SAC's Motion to Dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(6), which challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6) is made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7012. Dismissal is proper only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir.1993). In considering a motion to dismiss, the court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461, *reh'g denied* (7th Cir.), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993).

### *Pleadings*

The following well pleaded allegations in the Complaint are accepted for purposes of considering the instant motion to dismiss along with other facts presented by the bankruptcy record:

On January 27, 1997, Knox purchased a 1994 Chevy Cavalier. She financed the purchase by means of a retail installment contract that was assigned to SAC. The cash price of the car was $7,610.97.

Knox subsequently filed for Chapter 13 bankruptcy protection. On September 26, 1997, SAC filed a proof of claim in Knox's Chapter 13 case. The proof of claim listed the secured portion of the claim as $9,345.18. This amount listed as secured consisted of the balance due on the retail installment contract, an amount greater than the purchase price of the car. Knox alleges that listing the account balance is not proper because the proof of claim form states "[a] claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim." Thus, Knox alleges, the person preparing the proof of claim form is told that the amount to be listed as a "secured claim" is the "value of the property" that serves as collateral for the debt.

On January 22, 1998, Knox filed an Objection to Automobile Claim of SAC ("Objection") pursuant to Fed.R.Bankr.P. 3007. In the Objection, Knox alleged that SAC had filed a "secured gross claim" that included unmatured interest in violation of § 502(b)(2) of the Bankruptcy Code. Knox requested that SAC's secured claim be reduced to the appraised value of the car and that SAC be given leave to file an additional unsecured claim. On February 26, 1998, the Objection was heard and an Order entered in Knox's favor. It was ordered that SAC's claim be bifurcated into a secured and an unsecured component with the secured component corresponding to the appraised value of the car, $4,900. Also, SAC was given leave to file an unsecured claim computed as $9,345.18, less unmatured interest, less $4,900, calculated as of August 22, 1997.

Knox alleges that SAC regularly files proofs of claim in bankruptcy proceedings that intentionally inflate and misrepresent the value of SAC's collateral. Because the claims are automatically allowed pursuant to 11 U.S.C. § 502 unless the debtor objects to them, the effect of this practice, Knox alleges, is to cause injury by giving debtors a choice between paying inflated amounts or incurring legal and appraisal fees to challenge SAC's claims. The intent of SAC's practice, Knox alleges, is to take advantage of customers who were financially unable to protect themselves against SAC. Knox alleges that she was damaged as a result of the improper proof of claim because she was forced to incur an appraisal fee to challenge the claim. Amended Complaint, ¶ 15. Knox's attorney was awarded an administrative claim of $50 for reimbursement of the cost of the appraisal advanced to contest the Knox claim, but since all funds in the Chapter 13 plan come

from Knox, the $50 expense was paid by Knox to reimburse her counsel.[1]

SAC makes the following arguments to support granting its Motion to Dismiss: (1) that the Complaint is barred by res judicata because it is Knox's second attempt to litigate the proof of claim; (2) that the 11 U.S.C. § 105 claim should be dismissed because there is no private right of action under the provision; (3) that the claim for unjust enrichment and Illinois consumer fraud should be dismissed because both claims are preempted by the Bankruptcy Code; and lastly, (4) that Knox fails to adequately plead injury under the Illinois Consumer Fraud Act.

## DISCUSSION

### Jurisdiction

The source of federal jurisdiction over bankruptcy matters is 28 U.S.C. § 1334. That provision grants district courts jurisdiction over bankruptcy cases and proceedings arising in or under Title 11 U.S.C. (the Bankruptcy Code), or related to a bankruptcy case. 28 U.S.C. § 1334.

The District Judges' bankruptcy authority may be delegated to Bankruptcy Judges under 28 U.S.C. § 157. In the Northern District of Illinois, the District Court has provided for such referral to Bankruptcy Judges under Local Rule 2.33(A).

However, § 157 does not give bankruptcy judges full authority over all matters as to which the district courts may exercise jurisdiction under § 1334. Instead, with respect to proceedings other than the bankruptcy petition itself, § 157 allocates the jurisdiction created by § 1334 between "core" and "non-core" proceedings. In sum, bankruptcy judges have authority to hear and determine core proceedings "arising under" Title 11 U.S.C. or "arising in" a case under Title 11, and have limited authority to hear and recommend

disposition as to non-core proceedings "otherwise related to a case" under Title 11.

In this case, Knox asserts claims not only on her own behalf but on behalf of other class members, some of whom are identified in the Amended Complaint. Consequently, the jurisdictional inquiry leads to different results for Knox's individual claims and claims asserted by her on behalf of the putative class.

A noncore proceeding "relates to" a case under Title 11 if the claim affects the amount of property available for distribution or the allocation of property among creditors. *Matter of FedPak Systems, Inc.*, 80 F.3d 207, 213–14 (7th Cir.1996); *Pettibone Corp. v. Easley*, 935 F.2d 120, 123 (7th Cir.1991); *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990). Knox's individual claim dispute could well have that effect in her bankruptcy, and there could therefore be related jurisdiction if Code § 506 violations gave rise to a cause of action (which, as discussed below, they do not). However, core jurisdiction certainly lies over resolution of claims and objections thereto. 28 U.S.C. § 157(b)(2)(B).

The same cannot be said, however, about the claims which Knox asserts on behalf of class members asserted to be similarly situated who are debtors in other bankruptcy cases in this and other judicial districts. No core jurisdiction lies in this bankruptcy case over such claims. Moreover, class claims for monetary recovery could only benefit the class members, but could not affect the amount of property available for distribution in Knox's case and thus could not affect allocation of property among Knox's creditors. This Court is not a forum for recovery of money that cannot be part of the bankruptcy estate of this Debtor. *See Wiley v. Mason*

---

1. All the foregoing details concerning Knox's successful challenge to the secured claim were not pleaded in the Complaint but were acknowledged in or undisputed by Plaintiff's opposition to dismissal, and are part of the bankruptcy case record.

*(In re Wiley)*, 224 B.R. 58, 64 (Bankr. N.D.Ill.1998) and cases cited therein.

In a recent opinion, Bankruptcy Judge Katz in this District had a different view, holding that because each putative class member's basis for redress from inflated claims would be under core jurisdiction, therefore core jurisdiction lies in this Court and case for collective treatment of all such claims substantially related in all bankruptcy cases. *In re Aiello*, 231 B.R. 693 (Bankr.N.D.Ill.1999). For reasons discussed in *Wiley*, this Court does not follow the reasoning of *Aiello*. Indeed, while other judges in other bankruptcy cases have core jurisdiction over each potential class member's claim, that does not give this Judge core jurisdiction over claims of debtors not before this Court.

■ Nor does "related to" jurisdiction lie here for the asserted class claims. *Fisher v. Federal Nat'l Mortgage Ass'n. (In re Fisher)*, 151 B.R. 895, 897 (Bankr. N.D.Ill.1993) (finding no "related to" jurisdiction in proceeding involving claims of other Chapter 13 debtors where resolution of the claims would have no effect on the amount of property available in the class representative's estate or on the allocation of property to the class representative's creditors).

■ A proceeding "arises in" Title 11 if it encompasses administrative matters that arise only in bankruptcy cases,—those being matters not based on any right expressly created by Title 11 but without existence outside of bankruptcy. *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir.), *cert. denied*, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1144 (6th Cir.1991), *reh'g denied; Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987). As with the "related to" jurisdiction, the class claims for unjust enrichment and consumer fraud and relief under § 105 do not arise in Knox's bankruptcy. These claims are in no way incident to the administration of Knox's bankruptcy case.

■ A proceeding "arises under" Title 11 if it invokes a "substantive right" provided by Title 11 (*Barnett*, 909 F.2d at 981), that is if a cause of action is "created or determined" by a statutory provision of Title 11. *Harris Pine*, 44 F.3d at 1435; *Wolverine*, 930 F.2d at 1144; *Wood*, 825 F.2d at 96. Neither the unjust enrichment claim nor the Illinois consumer fraud claim invoke a substantive right created by federal bankruptcy law; instead, the claims invoke rights assertedly created under state law. *See Barnett*, 909 F.2d at 981 (RICO claim brought by trustee of bankruptcy estate did not "arise under" Title 11, even though it accrued while the bankruptcy was pending and involved the trustee's rights under the Bankruptcy Code); *Fisher*, 151 B.R. at 898 (class action claims for violation of unfair and deceptive practice statute and breach of contract that accrued during Chapter 13 case invoked rights created by state law and therefore did not arise under Title 11).

■ Knox refers to § 506 of the Bankruptcy Code as support for her contention that SAC is required to list the actual car value as the secured claim. Mere reference to provisions and policies of the Bankruptcy Code alone is not enough to confer "arising under" jurisdiction. *Fisher*, 151 B.R. at 898 (quoting *Marozsan v. U.S.*, 852 F.2d 1469, 1491 (7th Cir.1988), "[t]hat a court inevitably will consider an issue of federal law to reach a final decision does not mean that the claim 'arises under' that law"). Because this case invokes a substantial right under the Code, it could be said to rest on "arising under" core jurisdiction except for the ruling (discussed below) that Congress has not authorized a cause of action for damages under § 506. However, jurisdiction lies in Count I to "strip down" the car valuation to its actual value, a remedy that can be sought either by motion or by adversary proceeding and was already obtained by Knox through her earlier motion.

Counts II and III, on the other hand, assert causes of action created under state law, even though they rest on contentions that SAC failed to comply with a Bankruptcy Code provision. Thus they do not arise under or in the Bankruptcy Code.

Knox also requests class relief under 11 U.S.C. § 105 against SAC's conduct complained of. However, as discussed below, § 105 is not the source of an independent cause of action nor does it invoke or provide any substantive rights or jurisdictional authority.

Venue for Knox's individual claim is proper under 28 U.S.C. § 1409(a).

### Class Certification Issues

■ Class determination must ordinarily be made prior to any dispositive ruling on the merits. *Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992); *Bennett v. Tucker,* 827 F.2d 63, 66–67 (7th Cir. 1987); *Hickey v. Duffy,* 827 F.2d 234, 237 (7th Cir.1987). However, in *Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 941 (7th Cir.1995), a panel of the Seventh Circuit found that a motion for summary judgment before any decision whether to certify a suit as a class action was not improper. The opinion concluded:

> It is true that Rule 23(c)(1) of the civil rules requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment. But "usually" is not "always" and "practicable" allows for wiggle room.

*Id.* (citations omitted).

■ If a class action is dismissed or ruled upon on the merits prior to certification of the class, only the named plaintiff is bound by the ruling. Thus any member of the putative class could still bring additional litigation against the defendant in a court having jurisdiction. If however, a class is certified prior to dismissal of any class action, class members who do not opt out would be bound by that ruling.

The class issues under Fed.R.Civ.P. 23(c) (Fed.R.Bankr.P. 7023) have not yet been decided in this case. Issues of certification requested in the Complaint have been deferred until this Motion to Dismiss has been decided. However, since jurisdiction does not lie here over possible class claims for dollar recovery or even injunctive relief in this case, it would be singularly inappropriate for this Court to decide any class issues.

### Plaintiff Lacks Standing to Seek Injunction and has Adequate Remedy at Law

In addition to the monetary class relief for which this Court lacks jurisdiction, Knox seeks to protect class members through her request for injunctive relief. However, Knox has (and it would appear all other debtors similarly situated have) perfectly adequate remedies at law that makes issuance of injunctive relief unnecessary and thus inappropriate. Moreover, Knox lacks standing to seek that injunction on behalf of any class.

■ Knox requests an injunction prohibiting SAC from filing similar secured claims that are allegedly inflated in the future. But since Plaintiff has already obtained relief from the inflated claim and does not allege intent to file again for Chapter 13 protection, for reasons stated below, she has no further claim except under Fed.R.Bankr.P. 9011. Therefore, she lacks standing to seek an injunction. *See Feit v. Ward,* 886 F.2d 848, 857 (7th Cir.1989). In *Feit,* the court found that the plaintiff lacked standing to seek injunctive relief preventing the defendant, his former employer, from disciplining or discharging its employees for exercising their first amendment rights. Because the plaintiff was no longer an employee of the company, the opinion found that, even if the relief requested was granted to the plaintiff, he would not benefit and was no longer affected by defendant's actions that were complained of.

Similarly, Knox lacks standing to pursue her claim seeking an injunction prohibiting

SAC from filing inflated secured claims in the future. SAC has already filed a proof of claim in Knox's Chapter 13 case which has been ruled on in favor of Knox. Therefore, even if the Court were to grant the class relief she requests to enjoin the practice complained of, Knox would not benefit from the injunction which would protect only others. Nor would Knox be affected by any future action in which SAC filed inflated secured claims. She would only be affected if she again filed for bankruptcy protection and again owed a secured debt to SAC that again required SAC to file a proof of claim. However, Knox does not allege that she intends to file again for Chapter 13 protection. *See Rivera v. Dick McFeely Pontiac, Inc.*, 75 F.R.D. 1, 2 (N.D.Ill.1977) (plaintiff lacked standing to seek injunction against defendant because he never intended to enter into another contract with defendant). A panel opinion in this Circuit has expanded on that principle by holding that a party without a claim cannot be a class representative. *Robinson v. Sheriff of Cook County*, 167 F.3d 1155 (7th Cir.1999).

Knox also seeks "injunctive relief ... ordering SAC to submit amended proofs of claim and refunding overpayments." Knox argues that, even though her claim objection successfully reduced the SAC claim, she was damaged because, due to SAC's filing an inaccurate proof of claim, she incurred a $50 cost to have an appraisal done on her car.

 One seeking an injunction bears the burden of establishing five requisite elements: (1) lack of adequate remedy at law; (2) irreparable harm if the preliminary injunction is not issued; (3) a reasonable likelihood of prevailing on the merits; (4) that the resultant harm if the preliminary injunction is not granted outweighs the harm the defendant will suffer if the injunction is granted; and (5) the injunction will not harm the public interest. *Ping v. Nat'l Educ. Ass'n*, 870 F.2d 1369, 1371 (7th Cir.1989). The first three re-

quirements were not met here and there is no need to reach the others.

 A plaintiff can show the inadequacy of the legal remedy "by demonstrating that damages would not adequately compensate him." *Crane by Crane v. Indiana High School Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir.1992). Here, however, the claim was stripped down to its correct secured value, leaving unresolved the heretofore unasserted possible claim for damages to recover the $50 in appraisal expense. Monetary damages (if proven) would adequately compensate Knox, or any debtor similarly situated, because their asserted injuries are financial. Knox's claim is therefore one that can be adequately remedied at law. *See Wisconsin Central Ltd. v. Public Service Comm'n of Wisconsin*, 95 F.3d 1359 (7th Cir.1996) ("With the question being one of monetary compensation, a plaintiff would be hard pressed to demonstrate either irreparable harm or an inadequate remedy at law").

 After a creditor files its proof of claim, the debtor may object to that claim under § 502(b) of the Bankruptcy Code. A debtor is permitted to modify the creditor's asserted rights to a secured claim through a process known colloquially as "lien stripping," by which an objection filed to the claim, if successful, "strips down" a creditor's lien so that it can be satisfied by paying only the actual collateral value. *Bank One, Chicago, N.A. v. Flowers*, 183 B.R. 509, 512 (N.D.Ill.1995). Section 506(a) divides or bifurcates the creditor's claim into two components: part secured and part unsecured. A claim is secured only to the extent of the value of the collateral; the portion of the claim in excess of the value of the collateral is unsecured. Section 506(d) voids any lien against a debtor that is not an "allowed secured claim." Under § 502(b), once the objection is made, the amount of the claim is to be determined by the bankruptcy judge after notice and a hearing. *In re The Medicine Shoppe*, 210 B.R. 310, 312

(Bankr.N.D.Ill.1997). In this case, when Knox objected to SAC's proof of claim, the Order granting her Objection "stripped down" SAC's claim. Thus, Knox has already requested and received that remedy available to her.

■ However, the "strip down" procedure is not the only available remedy. An adequate remedy may also be available to Knox to obtain the monetary redress sought for the asserted egregious violation of Bankruptcy Code § 506. Monetary sanctions, if warranted, may still be available under Fed.R.Civ.P. 11 (Fed. R.Bankr.P. 9011) which allows imposition of sanctions on an attorney or unrepresented client for signing and filing pleadings, petitions, written motions without factual basis. Rule 9011(b)(2) and (3) provide in part:

> By presenting to the court ... a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances—
>
> ...
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension or modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

Proofs of claim that do not meet that standard can violate Rule 9011, and sanctions have been imposed under that Rule for the filing of improper claims. *See Hamilton v. United States (In re Hamilton),* 104 B.R. 525 (Bankr.M.D.Ga.1989) (Rule 9011 sanction imposed upon the IRS for filing a proof of claim for taxes not owed, that claim having been filed without

prior reasonable inquiry); and *In re McAllister,* 123 B.R. 393 (Bankr.D.Or.1991) (sanctions imposed against Oregon Department of Revenue which filed proof of claim for income taxes allegedly owed by debtor when taxes were not in fact owed).

■ The reasonableness of a party's conduct and factual inquiry under the circumstances is the standard used to determine whether that party made reasonable inquiry before filing a claim. *In re Film Ventures Int'l Inc.,* 89 B.R. 80, 83 (9th Cir. BAP 1988).

Here the filed proof of claim stated that "[a] claim is unsecured ... to the extent that the value of such property is less than the amount of the claim." Thus, the secured claim filed by SAC, Knox alleges, clearly represented that the amount listed as a "secured claim" was the "value of the property" serving as collateral for the debt. The claim as filed was not divided into unsecured and secured parts. Knox alleges that the amount listed on SAC's proof of claim was more than the price she paid to purchase the car. Knox also alleges that SAC knew that it had not appreciated between the time it was sold and the filing of the proof of claim. If that be proven, then it could be considered whether SAC neglected its obligations to make a reasonable inquiry into the collateral value before filing the claims and whether it should have filed a bifurcated claim. Such inquiry could result in sanctions under Rule 9011 for actual damages "including" fees and costs against a responsible party and its counsel if those are warranted.

As this Opinion is on a motion to dismiss, Knox's well pleaded allegations must be accepted as true. Those allegations contend or at least imply that under the circumstances SAC and its counsel did not make a reasonable inquiry prior to filing its claim here and in other cases.

In any event, Knox holds adequate remedies at law for her own claims, and members of the asserted class can assert the same remedies in their own cases. Indeed, if the facts are provable as alleged, it

is remarkable that the Chapter 13 debtor bar in this District has never sought as yet in any case to obtain Rule 9011 sanctions.

### Knox's Claims for Rule 9011 Sanctions are not Barred by Res Judicata

SAC argues that Knox's Complaint is barred by res judicata because it articulates essentially the same challenge to SAC's proof of claim that Knox presented in her Objection. Knox counters that claims in the Complaint are different from valuation issues earlier litigated because Knox now seeks redress for SAC's allegedly intentionally and systematically submitting inflated secured claims.

■■■■■ The doctrine of *res judicata* bars relitigation of claims that were asserted or could have been asserted in an earlier action. *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York*, 112 F.3d 257, 259 (7th Cir.1997). "Res judicata reflects fundamental public policy that there be an end to litigation, which is particularly strong in the bankruptcy context." *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir.1994). Three elements must be present for res judicata to apply: (1) a final judgment on the merits in a prior action; (2) an identity of the cause of action in both the prior and subsequent suits; and (3) an identity of parties or privies in these suits. *Id.*

■■■■■ Knox and SAC are parties to the objection and are parties to the present adversary proceeding. Moreover, the Order which required the bifurcation of the claim into secured and unsecured components and reduced the secured component to the value of the collateral was a final judgment on the merits of that issue. *See Matter of Wade*, 991 F.2d 402, 406 (7th Cir.), *cert. denied*, 510 U.S. 870, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993) (an order allowing or denying a claim is final and appealable); *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 742 (5th Cir.1993) (an order allowing a claim is a final judgment for res judicata purposes). Thus, two elements are clearly present.

Only one element is at issue: Whether there was an identity of the cause of action. Res judicata "requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." *Perkins v. Board of Trustees of the University of Illinois*, 116 F.3d 235, 236 (7th Cir.1997). For purposes of res judicata, two claims are so closely related that they constitute the same transaction if they are "based on the same, or nearly the same, factual allegations." *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir.1993).

SAC argues that Knox could have raised in her Objection to the claim all complaints now asserted on her own behalf against SAC for its allegedly abusive practice and relies on *Williams v. Transouth Financial Corp. (In re Williams)*, No. 98–A–00895, slip op. at 5 (Bankr.N.D.Ill. Oct. 1, 1998). In *Williams*, the plaintiff filed an objection to the defendant's proof of claim. She requested sanctions in the objection because the defendant had included unmatured interest in its secured claim. Also the plaintiff requested a bifurcation of the defendant's claim. The plaintiff subsequently filed an adversary proceeding in which she asserted claims based on defendant's allegedly abusive filing practice. Judge Lefkow found that the plaintiff should have set forth all of her claims in the objection and not limited herself to a request for sanctions. The claims in the adversary proceeding were thus found to be barred by res judicata because there was no obstacle to them being raised in the objection.

In the instant case, the valuation of Knox's car was raised as an issue in the Knox Objection to SAC's claim in order to have that secured claim reduced to the appraised value of the car. That gave rise to a contested proceeding which applied all procedures for Adversary cases except the need for summons. Fed.R.Bankr.P. 9014. If Debtor had cause of action for damages

(which she did not for reasons later discussed), she could have raised it there. In the present Complaint, Knox alleges that SAC filed its claim knowing that it had listed as secured an amount greater than the value of the collateral in order to mislead Knox, and routinely does so to mislead others. Thus, both the Objection to claim and the Complaint as it pertains to the Plaintiff each arose out of the same general factual background, namely that SAC filed a proof of claim in which it listed a secured claim assertedly known to be greater than the actual value of collateral. That means there is an identity of causes of action and all elements of *res judicata* are present as to the proper amount of secured claim. Since the stripdown was the only substantive claim that Plaintiff can bring under § 506 for reasons later discussed, *res judicata* bars continuation of her present action for relief under that provision on her own behalf.

■■■■ However, the remedy of sanctions under Fed.R.Bankr.P. 9011, is not barred by *res judicata.* Every pleading in bankruptcy, except for specified statements and schedules, must be signed by counsel or an unrepresented party, Fed. R.Bankr.P. 9011(a), and the execution represents *inter alia* that the signer has determined through inquiry that the allegations have a factual basis. Rule 9011(b). As earlier discussed, this Rule applies to claims filed in bankruptcy. Rule 9011(c) outlines the manner in which a request for sanctions is made: "A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)." Rule 9011(1)(A). Such motion must assert contentions under that Rule beyond those asserted in the objection to claim under §§ 502(b) and 506 of the Code, and must be filed separately from the "strip down" motion.[2] Thus, any request for redress under Rule 9011 could

not have been presented in the earlier claim objection proceeding, and the Debtor–Plaintiff's pending individual claim for financial redress, if presented by motion under that Rule, could not be deemed barred under principles of *res judicata.* Accordingly, although the Objection to claim has been granted, Knox can still file a request for sanctions by a motion separate from the original stripdown motion, and that remedy is not barred by *res judicata.* Rule 9011 relief must, by terms of that Rule, be raised by motion, and it remains to be seen whether Plaintiff will file such motion in the bankruptcy proceeding.

### 11 U.S.C. § 105 and § 506 Do Not Give Jurisdiction Basis or Create Cause of Action in Count I

Knox asserts that SAC intentionally interfered with the bankruptcy system and that the Court should grant the relief she requested pursuant to 11 U.S.C. § 105. SAC argues that there is no private right of action under that provision of the Code, whereas Knox asserts that no private right of action is needed because this Court allegedly already has jurisdiction over Knox's bankruptcy.

■■■■ Section 105 provides that a bankruptcy judge "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the bankruptcy code. This provision provides a bundle of authorities for the bankruptcy judge to carry out provisions of the Code where jurisdiction is supplied by other statutory sources. It does not in itself provide any cause of action allowing suit to recover for a defendant's filing of an allegedly fraudulent proof of claims. *See In re Fesco Plastics Corp. Inc.,* 996 F.2d 152, 154 (7th Cir.1993)(Section 105 "delineates the limited equitable power of the bankruptcy courts . . . ." Under this provision, "a court may exercise its equitable power

---

**2.** The pleader has a "safe harbor" permitting withdrawal of the offending pleading without penalty in some instances, but not if the alleged misconduct arises under Rule 9011(b) which might apply to the claim filings complained of. *See* Rule 9011(c)(1)(A).

only as a means to fulfill some specific Code provision"). *See* also *In re Anderson,* 159 B.R. 830, 835 (Bankr. N.D.Ill.1993) ("§ 105 is generally viewed as a source of authority to enter necessary orders only when authority to do so is otherwise found. The statutory language ... thus suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective") (quoting 2 *Collier on Bankruptcy,* ¶ 105.01 at 105–4 (15th Ed.1992)); *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir.1993).

Therefore, there is no basis for Knox's claims in Count I under § 105 unless she can demonstrate that Congress intended to create an implied private right of action. *Allison v. Liberty Sav.,* 695 F.2d 1086, 1088 (7th Cir.1982) (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).

▮ A four part test is applied to determine propriety of implying a private right of action: (1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. In the application of the test, the four factors are not equally weighted; the central inquiry is whether Congress intended to create a private right of action. *Id.*

▮ Most courts that have addressed the issue have determined that no private remedy or private right of action is created by § 105. *See Simmons v. Ford Motor Credit Co. (In re Simmons),* 224 B.R. 879 (Bankr.N.D.Ill.1998) (Lefkow, J.) (holding

that § 105 is not without limits and rejecting an independent right of action). *In re Costa,* 172 B.R. 954, 966 (Bankr.E.D.Cal. 1994) (holding that, because "before the enactment of 362(h) ... courts generally declined to imply a damages cause of action" and "Congress responded by creating a compensatory and punitive damages remedy" via § 362(h), it follows that legislation similar to 362(h) "would be necessary to create a private cause of action under § 105").

Knox argues that the *Simmons* decision is contrary to *Wiley v. Mason,* 224 B.R. 58 (Bankr.N.D.Ill.1998), in which this Court decided that injunctive relief could be provided to a systematic violation of the Bankruptcy Code provisions relating to reaffirmation of debt pursuant to 11 U.S.C. § 524. In *Wiley,* this Court denied a motion to dismiss and a motion for summary judgment, thereby upholding the possibility of a cause of action under § 524 of the Code. In that case, § 105 provided authority for the remedy found necessary to correct the alleged systematic violation of 11 U.S.C. § 524. Therefore, *Simmons* is not contrary because there Judge Lefkow found "the practice complained of here has not been shown to violate any explicit statutory directive." Judge Lefkow concluded that, "[e]ven accepting as true the Debtor's allegation that the creditor regularly files proofs of claims in which the entire amount of its claim is characterized as secured, the court concludes that § 105(a) does not authorize the relief she seeks." *Id.* at 885.[3]

There is additional persuasive reasoning in a recently decided opinion of District Judge Castillo, cited as *Holloway v. Household Automotive Fin. Corp.,* 227 B.R. 501 (N.D.Ill.1998). His opinion found that no private right of action can be implied under § 105 of the Code for the

---

**3.** On a motion for reconsideration of *Simmons,* Bankruptcy Judge Lefkow reaffirmed dismissal of the class claims. No jurisdiction was found over class claims under either "related to" or "arising under" jurisdiction be-

cause the claims asserted causes of actions that "at heart ... are created and will be determined by state law." *Simmons v. Ford Motor Credit Co.,* 237 B.R. 672, 677 (Bankr. N.D.Ill.1999).

alleged filing of fraudulently inflated claims. *Id.* at 505. In contrast to § 105, other sections of the Code such as § 362(h) expressly provide a private right of action for violation of its provisions. *Id.* Congress created this private right of action under § 362(h) "in 1984 as part of other sweeping amendments to the Bankruptcy Code, *see* Pub.L. No. 98–353, Section 304, 98 Stat. 352 (1984), but enacted no similar amendments to § 105(a)." *Id.*

Judge Castillo reasoned that implying a private right of action to remedy the filing of fraudulent proofs of claim would be inconsistent with the underlying legislative scheme where Congress has already provided an express remedy for such asserted abuses.

As shown earlier, very adequate and effective remedies were available through the Bankruptcy Code and Rules to redress the alleged improper claims filings by SAC if they can be proven.

***Claims for Unjust Enrichment (Count III) and Consumer Fraud Claim under Illinois Law (Count II) Should Be Dismissed as Preempted***

Count III of the Complaint asserts that SAC's pattern of filing proofs of claims represents a calculated interference by SAC with the bankruptcy system that results in receipt of money under circumstances constituting unjust enrichment. SAC argues that Knox does not assert sufficient allegations to constitute unjust enrichment and that the claim for unjust enrichment is preempted by the Bankruptcy Code. Count II of the Complaint asserts that SAC engaged in deceptive and unfair conduct in violation of the Illinois Consumer Fraud Act. SAC contends that the state law fraud claim is also preempted by the Bankruptcy Code.

■■■ As to Count III, a claim for unjust enrichment is an equitable claim that arises when a party (1) receives a benefit; (2) the benefit is to the plaintiff's detriment; and (3) the defendant's retention of

that benefit would be unjust. *TRW Title Ins. Co. v. Security Union Title Ins. Co.,* 153 F.3d 822 (7th Cir.), *reh'g denied,* (1998). However, SAC has not received a benefit because SAC's secured claim has already been reduced to the value of Knox's car. SAC will now only receive that amount that was granted in the Order as a secured claim: the value of the car.

■■■ Moreover, bankruptcy judges cannot award equitable relief independent of rights arising in or under the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); *Fesco,* 996 F.2d at 154; *See also In re Longardner & Assoc., Inc.,* 855 F.2d 455, 462 n. 9 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989) (the Bankruptcy Code outlines the limited equitable power of the bankruptcy courts).

Although bankruptcy judges routinely deal with state law issues involving claims and lien rights asserted in bankruptcy, the theories asserted in Counts II and III raise a very different problem, the question of preemption by the Bankruptcy Code of state law theories asserted as remedies for Bankruptcy Code violations.

[38] The expansive reach of the Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts and therefore preempted a state law consumer fraud claim. *Cox v. Zale, Delaware, Inc.,* 1998 WL 397841 at *5 (N.D.Ill. July 13, 1998); *see also Holloway,* 227 B.R. at 501. In reaching the conclusion regarding preemption, *Cox* relied on *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 912–15 (9th Cir.1996), that held:

A mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control

which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.

*Id.* at 913. *See also In re Shape, Inc.,* 135 B.R. 707, 708 (Bankr.D.Me.1992) (alleged unfair and deceptive business practice claim preempted because it was based solely on alleged violations of automatic stay provisions of the Bankruptcy Code and the state law cause of action relied on the Bankruptcy Code in order to obtain a state law remedy).

 Knox's claim for violation of the Illinois Consumer Fraud Act and unjust enrichment are intricately related and wholly dependent on asserted violations of the Bankruptcy Code. Without the Bankruptcy Code's requirement that SAC submit proofs of claim, and the Code's instruction concerning the appropriate method by which to value secured claims under § 506, Knox would have no factual basis on which to bring an action for deceptive conduct under the Illinois consumer fraud statute. *See Holloway,* 227 B.R. at 508.

The *Shape* opinion also pointed out that the Bankruptcy Code provides a comprehensive scheme reflecting a "balance, completeness and structural integrity that suggest remedial exclusivity." 135 B.R. at 708 (quoting *Periera v. Chapman,* 92 B.R. 903, 908 (C.D.Cal.1988)). While it might be excessive to view the Bankruptcy Code as a fully consistent pattern of law (an outcome hardly possible in a feisty democracy wherein different interests contend for Bankruptcy Code changes before the Congress), *Shape* correctly concluded that "where a federal statute was applicable, and had its own enforcement scheme and separate adjudicative framework, it must supercede any state law remedies." *Id.*

As in the issue regarding a private right of action under § 105, Judge Castillo found that the Bankruptcy Code provides its own comprehensive scheme to guard against fraud and remedy it. *Holloway,* 227 B.R. at 508. As earlier discussed, there is also a clear system providing remedies for inflated claims.

Both the unjust enrichment claim and the claim under the Illinois Consumer Fraud Act seek remedies for violations of the Bankruptcy Code for which the Code itself and Rules provide other remedies. Both Counts II and III are therefore preempted by the Bankruptcy Code. Because the two actions under Illinois law will be dismissed for that reason, there is no need to discuss other briefed issues pertaining thereto.

### CONCLUSION

For reasons, set forth above, SAC's Motion to Dismiss will be granted on all Counts.