In re Jason Eric **TATE** and Sherri Ann Tate, Debtors.

Jason Eric Tate, Sherri Ann Tate, and All Other Persons Similarly Situated, Plaintiffs,

v.

NationsBanc Mortgage Corporation, Defendant.

In re Rose G. Ballard, Debtor.

Rose G. Ballard, and All Other Persons Similarly Situated, Plaintiffs,

v.

NationsBanc Mortgage Corporation, Defendant.

Bankruptcy Nos. 97–32126, 97–32344. Adversary Nos. 97–3725, 97–3724.

United States Bankruptcy Court, W.D. North Carolina, Charlotte Division.

Oct. 2, 2000.

P. Wayne Sigmon, Gastonia, North Carolina, Richard M. Mitchell, Charlotte, North Carolina, John W. Taylor, Charlotte, North Carolina, for plaintiffs.

John H. Culver, III, Charlotte, North Carolina, Amy L. Pritchard, Charlotte, North Carolina, for defendant.

### ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

J. CRAIG WHITLEY, Bankruptcy Judge.

This matter came on for hearing before the undersigned on May 18, 2000, upon the parties' cross motions for summary judgment. Based on that hearing and the official Court file, the Court grants in part and denies in part each motion, as discussed more fully below.

### PROCEDURAL BACKGROUND

This is a class action involving the claims filing and attorney fee application procedures established under the United States Bankruptcy Code. The parties' dispute originates from the Chapter 13 cases of named plaintiffs Jason and Sherri Ann Tate ("the Tates") and Rose G. Ballard ("Ballard"). The Tates filed a bankruptcy petition in this Court on August 27, 1997. Ballard filed her petition on September 22, 1997. As a creditor, NationsBanc Mortgage Corporation ("NationsBanc") filed proofs of claim in the Tate and Ballard cases.

NationsBanc asserted in each proof of claim that it was entitled to reimbursement for $125 in "Bankruptcy Fees." This fee is the same amount that the bank paid its attorneys for the preparation and filing of its claim forms. On behalf of themselves and others similarly situated, the

named Plaintiffs instituted separate adversary proceedings objecting to the bankruptcy fee and the manner in which it was claimed. The two actions were consolidated on January 26, 1998.

The Court then certified Plaintiffs' consolidated adversary proceeding as a class action on May 20, 1998. The class is defined as:

All individuals who have filed a bankruptcy petition in the Western District of North Carolina against whom NationsBanc Mortgage has claimed as part of the sums due it pursuant to a consumer mortgage loan a "Bankruptcy Fee." The term "bankruptcy fee" means any charge by NationsBanc Mortgage, whether collected or not, which increases the amount claimed by NationsBanc Mortgage to be due from an individual which is assessed, directly or indirectly, after the filing of a bankruptcy petition by an individual, including those for which NationsBanc Mortgage has filed a proof of claim, and which would not have been claimed absent the bankruptcy, including but not limited to any charge for preparing or filing a proof of claim by NationsBanc Mortgage or by someone else on behalf of NationsBanc Mortgage. The term "Bankruptcy Fee" does not include attorney's fees and reimbursement of costs for which NationsBanc Mortgage has made specific application and/or motion (not a proof of claim or reaffirmation agreement) to the United States Bankruptcy Court and for which a specific Order of the United States Bankruptcy Court approving or denying said fees has been entered.

On behalf of the class, the named Plaintiffs assert six claims for relief. Their first and second claims seek disallowance of the bankruptcy fee on the grounds that (1) it is not a reasonable fee, and (2) it is not provided for in the agreement under which the claim arose, both of which are requirements under the Bankruptcy Code for the payment of professional fees from estate assets. Plaintiffs' third claim for relief seeks a declaratory judgment that the conduct described in the first and second claims violates the Bankruptcy Code. This claim also requests a permanent injunction to prevent NationsBanc from filing proofs of claim that include the fee in any future cases.

Plaintiffs' fourth claim seeks relief under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., ("TILA") and its implementing regulations found in Federal Reserve Board Regulation Z, 12 C.F.R. pt. 226. This claim is premised on Plaintiffs' assertion that the bankruptcy fee was a "finance charge" as defined by TILA and should have been disclosed by NationsBanc under the terms of that Act. Plaintiffs seek actual damages, a statutory penalty, and costs and reasonable attorney fees for the alleged TILA violation.

Finally, Plaintiffs' fifth and sixth claims for relief assert state law causes of action based on the filing of the proofs of claim. The fifth claim alleges that filing each proof constituted five separate violations of the North Carolina Fair Debt Collection Practices Act, N.C.Gen.Stat. §§ 75–50 to 75–56. Plaintiffs seek a statutory penalty of $10,000 for each class member for a total penalty of up to $2,550,000, as well as actual damages, attorney fees, and costs. Plaintiffs' sixth claim for relief asserts that filing the proofs of claim violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat. §§ 75–1 to 75–35, entitling each Plaintiff to treble damages, actual damages, attorney fees, and costs.

NationsBanc filed its motion for summary judgment on January 12, 2000. The Plaintiffs filed a cross motion for summary judgment on March 27, 2000. The issues have been fully briefed and argued, and after a pause to permit additional discovery, are now ready for decision.

## FACTS

NationsBanc services residential mortgages nationwide, with loan servicing cen-

ters in Louisville, Kentucky; Buffalo, New York; Richmond, Virginia; and Cypress, California. It services loans owned by customers or investors such as Fannie Mae, Freddie Mac, the VA and the FHA, among others. In addition, it services loans that are wholly owned by its affiliate, Bank of America. Since August of 1995, NationsBanc has contracted with Barrett Burke Wilson Castle Daffin & Frappier, LLP ("Barrett Burke"), a law firm based in Houston, Texas, to "outsource" the filing of proofs of claims in bankruptcy proceedings where NationsBanc is either the holder or servicer of mortgage loans. Outsourcing is a business practice in which one company hires a second company to perform work it would otherwise perform in house. Barrett Burke charges a flat fee of $125 for each proof of claim it files on behalf of NationsBanc.

Employees of Barrett Burke work in NationsBanc offices in Louisville, Kentucky to perform services under the contract. Barrett Burke generally keeps five employees in the bank's Louisville facility. None are attorneys. The Barrett Burke employees work with approximately sixteen employees of NationsBanc's bankruptcy department. The Barrett Burke employees are responsible for receiving notices of bankruptcy, determining whether a proof of claim needs to be filed, gathering supporting documents to be attached to proofs of claims, and sending the information to Barrett Burke's office in Texas. Thereafter, the firm also files the proofs of claim for NationsBanc.

On December 20, 1996, the Tates executed a promissory note to NationsBanc in the original principal amount of $45,600.00. The Tates granted NationsBanc a deed of trust on their residence as security for the loan. With regard to attorney's fees, § 7 of the Tate deed of trust provides:

> If ... there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regu-

lations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include ... appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.

> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Agreement.

In addition, § 21 of the Tate deed of trust states that in the event the debt is accelerated, NationsBanc "shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fee and costs of title evidence."

Likewise, on November 20, 1990, Ballard executed a promissory note to Sentry Mortgage Company in the original principal amount of $41,260.00. Ballard granted Sentry a deed of trust as security for her loan. The Ballard note and deed of trust were later assigned to NationsBanc.

Ballard's loan documents contain similar provisions for the recovery of attorney's fees and costs by the bank. First, § 6 of the Ballard deed of trust provides that:

> If ... there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property....

> Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower secured by this Security Agreement.

Section 6 of the Ballard note also provides that, in the event the debt is accelerated, NationsBanc "may require the borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note. Such fees and costs shall bear interest from the date of disburse-

ment at the same rate as the principal of this Note."

The Tates filed a Chapter 13 bankruptcy petition in this Court on August 27, 1997. Through its agent Barrett Burke, NationsBanc filed a proof of claim on October 16, 1997, for $45,392.20. The proof of claim consists of a one-page form signed by James L. DeLoach as "Bankruptcy Technician," with the promissory note and deed of trust attached. Although he characterizes himself as a "Bankruptcy Technician," Mr. DeLoach is actually a licensed attorney with Barrett Burke who has over twenty years experience in the fields of mortgage banking and bankruptcy law. The proof of claim also seeks $13.70 in uncollected late charges. However, of importance in this action is the additional claim NationsBanc makes for "Bankruptcy Fees" in the amount of $125.00.

The Ballard situation is similar. Ballard filed a Chapter 13 petition on September 22, 1997. At the time of her bankruptcy filing, Ballard was current in her mortgage payments to NationsBanc. NationsBanc filed a proof of claim on October 28, 1997 for the principal amount of $39,159.99. As in the Tate case, NationsBanc filed a claim in Ballard's Chapter 13 case for a "Bankruptcy Fee" in the amount of $125. The proof of claim again consists of a one page pre-printed form signed by James L. DeLoach as "Bankruptcy Technician," along with the Ballard promissory note and deed of trust attached.

Nowhere on the Tate or Ballard proofs of claim does NationsBanc disclose that the "Bankruptcy Fees" it is seeking are actually for its attorney's fees (hereinafter "Attorney Fee")[1]. Significantly, neither Barrett Burke nor NationsBanc filed an application with this Court seeking the approval of attorney's fees pursuant to Bankruptcy Rule 2016.

The Tates' Chapter 13 plan was confirmed on October 23, 1997. Ballard's Chapter 13 plan was confirmed on October 28, 1997. In both cases, the Trustee filed a Motion for Allowance of Claims Determination and Designation of Unsecured Percentage Dividend ("Tate Claims Allowance Motion"). This is a standard motion filed by the Trustee in all Chapter 13 cases, which serves to inform parties in interest of the claims to be paid in the plan. It does not give details as to the components of a given proof of claim. The Trustee's motions requested that the Court allow NationsBanc's claims as asserted in the bank's proofs of claim and required that any objections be filed in writing by a date certain.

Neither the Tates nor Ballard objected to NationsBanc's claims. The Administrative Order Establishing Procedure for the Allowance of Claims and Setting of Percentage Dividend in All Cases, entered by this Court on August 30, 1991 ("Claims Allowance Order") provides that the Trustee's motion is automatically granted if no objection is made during the stated time period. Because the Plaintiffs did not file objections, the NationsBanc claims were allowed.

## DISCUSSION

### A. Standard of Review on Summary Judgment

A court may grant summary judgment only if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden rests initially on the movant to show the court there is an absence of genuine issue concerning any material fact and that the non-movant cannot prevail. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The non-moving party then must show that there is evidence from which a jury

---

1. It is undisputed that the $125 "Bankruptcy Fee" is in fact reimbursement for NationsBanc's legal costs. Therefore, as a matter of convenience, the Court will hereafter refer to this amount as the "Attorney Fee."

might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The court must accept all of a non-movant's evidence as true and will view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### B. Subject Matter Jurisdiction

■ NationsBanc asserts that the Court lacks subject matter jurisdiction over this class action, particularly with regard to unnamed plaintiffs. The Court concludes otherwise. Subject matter jurisdiction exists over the claims of the entire class.

Subject matter jurisdiction over bankruptcy matters is vested in the district court by 28 U.S.C. § 1334, which provides that the "district court shall have original and exclusive jurisdiction of all cases under Title 11," and "original but not exclusive jurisdiction of all civil proceedings *arising under* Title 11, or *arising in* or *related to* cases under Title 11." 28 U.S.C. § 1334 (emphasis added). *See Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (discussing comprehensive scope of § 1334 jurisdictional grant).

The distinction between the district courts' original and exclusive jurisdiction is a hallmark of § 1334. In the original Bankruptcy Reform Act of 1978, the district courts' jurisdiction was described much as it is today: district courts had original and exclusive jurisdiction over all cases under Title 11, and original but not exclusive jurisdiction of civil proceedings arising under, arising in, or related to Title 11 cases. However, the 1978 Act also mandated that the bankruptcy courts, non-Article III courts under the United States Constitution, exercised all of the jurisdiction conferred on the district courts. 28 U.S.C. § 1471(a)–(c) (repealed).

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982), the Supreme Court held that such a broad grant of original jurisdiction to the bankruptcy courts exceeded Congress' power to create adjuncts to the Article III courts. Thus, the Reform Act was subsequently amended to allow the district courts to refer day-to-day handling of Title 11 cases to the bankruptcy courts. 28 U.S.C. § 157.

Under current law, bankruptcy judges in each judicial district are authorized to hear matters not as an independent entity, but as "a unit of the district court." 28 U.S.C. § 151. Subject matter jurisdiction remains in the district court, which may delegate matters to the bankruptcy judges. Pursuant to this district's Local Rule Referencing All Bankruptcy Matters to the Bankruptcy Judge and Providing for Bankruptcy Court Clerk, "[a]ll cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11" are referred to the Bankruptcy Judge. The Local Rule further provides that "all proceedings that are not core proceedings, but which are otherwise related to a case under Title 11" are referred to the Bankruptcy Judge as well.

■ Section 1334 distinguishes "cases" under Title 11 from "civil proceedings." Subject matter jurisdiction of cases is governed by § 1334(a), while jurisdiction over civil proceedings falls under § 1334(b). A "case" may be regarded as the "umbrella" under which all of the proceedings that follow a bankruptcy filing take place. 1 Lawrence P. King, *Collier on Bankruptcy,* ¶ 3.01[3] at 3–13 (15th ed. rev.1998). "Civil proceedings" consist of anything that occurs within a case—such as adversary proceedings, contested matters, and motions, etc. H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 5963 (1977).

■ Practically, the bankruptcy court's jurisdiction is defined by whether a given proceeding is one "arising under," "arising in," or "related to" a case under Title 11. A proceeding is one "arising under" Title 11 when it invokes a "substan-

tive right created by the Bankruptcy Code." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987). Examples include exemption claims under 11 U.S.C. § 522 or an action by a trustee under the avoiding powers contained in Chapter 5 of the Code.

■ Proceedings "arising in" Title 11 cases are those which " 'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.' " *In re A.H. Robins Co.*, 86 F.3d 364, 371 (4th Cir.1996) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987)). Examples include administrative matters, orders to turn over estate property, determination of the extent or priority of liens, contempt matters, and actions to recover postpetition accounts. *See* 1 Lawrence P. King, *Collier on Bankruptcy*, ¶ 3.01[4][c] at 3–29 (15th ed. rev.1998).

■ Finally, "related to" proceedings are determined by the *Pacor* test, which asks whether "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984); *See also A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (adopting *Pacor* definition of related to jurisdiction). If a proceeding could have such an effect, it is "related to." A proceeding "need not necessarily be against the debtor or against the debtor's property to satisfy the requirements for 'related to' jurisdiction." Rather, there must merely be "some nexus between the 'related' civil proceeding and the Title 11 case." *Lindsey v. O'Brien, Tanski, Tanzer (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir.1996), *cert. denied*, 519 U.S. 1071, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997).

■ If a proceeding cannot be categorized as "arising under," "arising in," or "related to," then the Bankruptcy Court lacks subject matter jurisdiction and cannot hear the matter.

■ Congress also redefined cases within the bankruptcy court's jurisdiction as "core proceedings," and defined all others as "non-core proceedings." 28 U.S.C. § 157(b), (c). Matters constituting core proceedings are listed in § 157(b)(2). If a proceeding is not core, the bankruptcy judge cannot determine the case without the parties' consent. If consent is lacking, the judge may only submit proposed findings of fact and conclusions of law to the district court, which may then enter a final judgment. 28 U.S.C. § 157(c). Core proceedings are roughly equivalent to proceedings "arising in" or "arising under" Title 11 cases, and non-core matters encompass those proceedings "related to" Title 11 cases as stated in 28 U.S.C. § 1334. *See generally* 3 David G. Epstein, Steve H. Nickles & James J. White, *Bankruptcy Practitioner Series* § 12–2 (1992).

In this case, the Plaintiffs' first three claims for relief seek partial disallowance of NationsBanc's claim on the grounds that the Attorney Fee is improper under § 506(b). That Code section requires that any claimed fee be "reasonable." As discussed in Part C below with regard to a creditor's ability to recover attorney's fees, § 506(b) of the Code and its procedural counterpart, Bankruptcy Rule 2016, create rights and duties that affect debtors and creditors alike. Therefore, the Plaintiffs' complaint invokes substantive rights created by the Bankruptcy Code and falls within the Court's "arising under" jurisdiction.

The Plaintiffs' claims also "arise in" a case under Title 11. Because the claims are based on alleged violations of procedural requirements unique to bankruptcy, they would have no existence outside of these bankruptcy cases. They therefore fall within the middle ground of "arising in" jurisdiction. *Robins*, 86 F.3d at 371.[2]

2. While the Court finds jurisdiction over all the Plaintiffs' causes of action, the Defendant admits that at least the first three claims, seeking disallowance of the Attorney Fee por-

It is also clear that these claims are core proceedings which may be heard and determined by the Court even absent consent. Bankruptcy judges are authorized to hear and determine all core proceedings arising under or arising in a case under Title 11. 28 U.S.C. § 157(b)(1). "Core proceedings" include matters concerning the administration of the estate, and the allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(A), (B).

NationsBanc filed claims against—and received funds from—each class plaintiff's estate. Plaintiffs now seek restitution of these estate assets. The class claims necessarily implicate issues of estate administration and also expressly fall under the § 157 provision for the allowance/disallowance of claims. As a result, this class action is a core proceeding.[3]

NationsBanc also argues that even if the Court has jurisdiction over the claims of the named Plaintiffs, it cannot exercise jurisdiction over the absent class members. The bank's pitch is that claims asserted by unnamed class members cannot affect the administration of the named plaintiffs' cases. The claims of absent class members may arise under, arise in, or relate to their own bankruptcy cases, but that relationship does not mean their claims are "related to" the Tate and Ballard cases. Without this nexus, the argument goes, jurisdiction over the class is lacking. See Lenior v. GE Capital Corp., 231 B.R. 662 (Bankr.N.D.Ill.1999) (dismissing action on grounds that unnamed Plain-

tiffs' claims did not "relate to" class representative's bankruptcy case).

The parties cite a lengthy list of cases to support their views on whether the Court may exercise subject matter jurisdiction over unnamed class plaintiffs.[4] However, the more recent and better reasoned authority demonstrates that the Court has jurisdiction over all class claims in this action. For example, in Noletto v. Nationsbanc Mortgage, 244 B.R. 845 (Bankr. S.D.Ala.2000), the court found "arising under" and "arising in" jurisdiction over a nationwide class of claims alleging violations of § 506(b). The Noletto court looked to the specific bankruptcy venue provisions in 28 U.S.C. §§ 1408–10 as support for its position. That court reasoned that if nationwide jurisdiction was unintended in bankruptcy proceedings, there would be no need to designate the most appropriate fora for the filing of particular matters within the states. Noletto, 244 B.R. at 849.

The Noletto court also discussed the argument, raised by opponents of class jurisdiction, that the claims of unnamed plaintiffs must "relate to" the named representatives' cases. The court said of such claims: "they ignore the language 'arising under' or 'arising in' a case under Title 11. Section 1334(b) is phrased disjunctively. The three categories offer alternative bases of jurisdiction." Id. at 849. Therefore, regardless of the impact of unnamed class members' claims on the named plaintiff's case, the Noletto court

---

tion of NationsBanc's proof of claim, are "classic examples of claims that 'arise in' a case under Title 11." Def.Mem. at 12.

3. Since it can hear and determine the class claims on the grounds of "arising under" and "arising in" jurisdiction, the Court does not reach the issue of "related to" jurisdiction.

4. Cases finding jurisdiction over class: Glenn v. Fidelity Financial Services, Inc., 1996 U.S.Dist. Lexis 1835 (S.D.Ala. February 1, 1996); Noletto v. Nationsbanc Mortgage, 244 B.R. 845 (Bankr.S.D.Ala.2000); Aiello v. Providian Financial Corp. (In re Aiello), 231 B.R.

693 (Bkrtcy.N.D.Ill.1999); In re Coggin, 155 B.R. 934 (Bankr.E.D.N.C.1993); Fleet v. United States Consumer Council Inc. (In re Fleet), 53 B.R. 833 (Bkrtcy.E.D.Pa.1985).

Cases finding no jurisdiction over class: Williams v. Sears, Roebuck and Co., 244 B.R. 858 (S.D.Ga.2000); Knox v. Sunstar Acceptance Corp., 237 B.R. 687 (Bankr.N.D.Ill. 1999); Lenior v. GE Capital Corp., 231 B.R. 662 (Bankr.N.D.Ill.1999); Wiley v. Mason (In re Wiley), 224 B.R. 58 (Bankr.N.D.Ill.1998); Simmons v. Ford Motor Co., 237 B.R. 672 (Bankr.N.D.Ill.1999).

found arising under and arising in jurisdiction over the entire nationwide class.

In *Williams v. Sears, Roebuck and Co.*, 244 B.R. 858 (S.D.Ga.2000), the court held that 28 U.S.C. § 1334(e) precludes jurisdiction over class claims unless each individual case was commenced or pending in the presiding court's district. Section 1334(e) provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction ... of property of the estate." Property of the estate includes causes of action. 11 U.S.C. § 541. The nationwide class complaint in *Williams* alleged violations of the automatic stay, the discharge injunction, and the Truth–in–Lending Act. 244 B.R. at 861. Giving § 1334(e) a strict interpretation, the court dismissed the class claims except those of debtors whose bankruptcy cases were filed in its district. The court reasoned that the claims were property of each debtor's estate, and that § 1334 prohibited a foreign court from exercising jurisdiction over that property. *Id.* at 865–66. *But see Noletto*, 244 B.R. at 850–54 (criticizing strict interpretation of § 1334(e) in *Williams*).

The class in the present case includes debtors whose cases were commenced or are pending in the Western District of North Carolina only. As a result, this case falls well within the boundaries set by either *Noletto* or *Williams*.[5]

At the very least a bankruptcy court may exercise subject matter jurisdiction over the claims of debtors whose underlying cases were filed in that court's district. A contrary holding would effectively read Bankruptcy Rule 7023 ("Class Proceedings") out of the law entirely. All of the class members' cases arose in this district, giving the Court core jurisdiction as previously discussed. Therefore, Plaintiffs are entitled to summary judgment on the issue of subject matter jurisdiction.

**C. Reasonableness of Attorney Fee**

■ Having established subject matter jurisdiction, the Court proceeds to the Plaintiffs' first cause of action. Plaintiffs assert that the Attorney Fee included by NationsBanc in its proof of claim is improper under 11 U.S.C. § 506(b). That section states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose.

Section 506(b) gives the Bankruptcy Court authority to award attorney's fees to a creditor when three conditions are met: (1) when the creditor is oversecured, (2) when the underlying agreement between the debtor and creditor provides for the award of fees and costs, and (3) when the fees and costs sought are reasonable. The Plaintiffs allege that the Attorney Fee does not meet the section's reasonableness requirement.

In the Plaintiffs' view, the Attorney Fee is unreasonable because the preparing and filing of a proof of claim in and of itself does not constitute the practice of law and should not be compensable as such. *State Unauthorized Practice of Law v. Paul Mason*, 46 F.3d 469 (5th Cir.1995). The Plaintiffs also maintain that the $125 fee does not represent the Defendant's actual cost for this service based on the attorney

---

**5.** *Nationsbanc* points out that in *Knox v. Sunstar Acceptance Corporation*, 237 B.R. 687 (Bankr.N.D.Ill.1999), the court held there is no statutory provision giving a bankruptcy judge jurisdiction over claims of debtors not before the court, even if those claims arise under the Bankruptcy Code. However, the same court stated that the bankruptcy judge presiding over each class member's case would have core jurisdiction over that class member's claim. *Id.* at 694. The cases of all the plaintiffs in this matter were commenced or are pending in the Western District of North Carolina. Thus, the bankruptcy court for this district certainly has core jurisdiction over every class member's case.

time and effort involved, but instead is simply a flat fee that lenders in the mortgage industry are willing to pay for preparation of a proof of claim.

NationsBanc counters that the proofs of claim are reasonably necessary to protect its rights in the collateral. The bank also states that the fee amount is reasonable in light of the hourly rates usually charged by Barrett Burke, and the time expended by its employees in preparing the proofs of claim.

Ultimately, however, resolution of the Plaintiffs' first claim does not turn on these arguments. The Court finds the Attorney Fee to be per se unreasonable, but it does so as a matter of federal procedural law, not upon an assessment of the work performed by Barrett Burke or its value.

The Bankruptcy Rules govern procedure in cases under the Code. Fed.R.Bankr.P. 1001. Bankruptcy Rule 2016 sets out a straight forward methodology for requesting payment of attorney fees. The rule applies to any person or entity seeking compensation for services or reimbursement of expenses from estate assets. It provides:

> Application for Compensation or Reimbursement. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.... The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor ...

Fed.R.Bankr.P. 2016(a). The fees sought by NationsBanc under § 506(b) would be paid from property of the Chapter 13 estate; therefore NationsBanc must comply with Rule 2016. *Matter of Lane Poultry of Carolina, Inc.*, 63 B.R. 745 (Bankr. M.D.N.C.1986): *Matter of Dooley*, 41 B.R. 31 (Bankr.N.D.Ga.1984). *See also In re Allen*, 215 B.R. 503, 1997 WL 769216 (Bankr.N.D.Tex.) ("All attorney's fees to be paid by debtors in bankruptcy cases must be approved by the Bankruptcy Court").[6]

The Rule 2016 procedure, which requires thorough documentation from a claimant, allows the court, the debtor, and other parties in interest to carefully review each fee application. It is this detailed application that courts rely on in gauging the reasonableness of fee requests under § 506(b).

NationsBanc failed to follow Rule 2016 when it inserted the disputed fee into its proof of claim. The bank did not file any application setting forth a statement of services rendered, time expended, expenses incurred, and amounts requested. It merely filed proofs of claim including the flat fee. Therefore, the Court was denied the opportunity to determine the reasonableness of these charges, as intended under the Bankruptcy Code.

The bank argues that the debtor and the trustee could have objected to its claim if they disputed the Attorney Fee. From the bank's perspective, it is not cost effective to file a motion for such a small sum. The latter assertion may be true. However, the claim objection mechanism is not a reasonable substitute for a fee reimbursement application.

An application for reimbursement of attorney fees under Rule 2016 is a detailed motion that describes with particularity what fees are being sought and under

---

**6.** NationsBanc identifies the $125 charge on its proof of claim forms as a "bankruptcy fee" rather than an attorney fee. Barrett Burke apparently believes this distinction renders a fee application unnecessary; instead, a debtor can object to the fee portion of the proof of claim if he or she wishes. *See* Plaintiff's Memo. at 21 (referencing deposition of Barrett Burke attorney). In light of Bankruptcy Rule 2016, the Court finds this interpretation of the law untenable.

what authority. Notice of the motion must be served on all creditors, affording them an opportunity to object. The burden of proof on the application and the monetary cost of seeking approval also lie with the movant.[7]

Contrast this procedure with a routine proof of claim. The claims filed by the bank lump the fee request in with the prepetition mortgage claim. No details are given about the sums sought or the authority under which they are claimed. Indeed, the very fact that a portion of the claim is for attorney's fees is itself disguised. The bank called the Attorney Fee a "Bankruptcy Fee," and the attorney who submitted the claim termed himself a "Bankruptcy Technician." Moreover, unlike a motion, a proof of claim is not served on parties in interest. Thus, to find such an improper fee, one would have to review the court's claim docket and each individual claim form. A debtor might then take on the burden of filing an objection and serving it—but this would be cost prohibitive and would pose a substantial hardship given the small sum claimed in each, individual case. Finally, the court itself would not be aware of the fee request and would be unable to perform its separate responsibility to review fee requests. 11 U.S.C. § 330.

The distinction is one of due process, and the keystone of due process is reasonable notice. An "elementary and fundamental requirement of due process for any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

Thus, the Fourth Circuit Court of Appeals has held on more than one occasion that where the Bankruptcy Code or Rules specify a level of due process necessary to effect a particular result (be it by motion, adversary proceeding, or otherwise), failure to comply with the procedural requirements invalidates the act, even if no objection thereto was timely filed. *Cen–Pen v. Hanson*, 58 F.3d 89 (4th Cir.1995) (confirmation of Chapter 13 plan that failed to treat claim as secured did not avoid creditor's lien without adversary proceeding); *In re Linkous*, 990 F.2d 160, 166 (4th Cir.1993) (notice to creditor of confirmation hearing did not satisfy due process when notice failed to specify that security valuation issues would also be considered). Once cannot simply shortcut bankruptcy procedural requirements and expect the order to stick.

In short, due to the lack of notice and the costs involved in objecting, bundling fee requests into proofs of claim all but guarantees their allowance, and guarantees that other parties will not dispute them. This stands the congressional intent of § 506 and Rule 2016 on its head.[8] Without a motion, notice to creditors, and court approval, the Attorney Fee cannot be termed "reasonable" under § 506. The Plaintiffs are therefore entitled to summary judgment on this issue.

### D. Court's Authority Under 11 U.S.C. § 105

■ Notwithstanding the foregoing finding that the NationsBanc Attorney Fee is unreasonable under § 506 and Bankruptcy Rule 2016, the Court must determine whether a cause of action will lie to remedy the Defendant's conduct. NationsBanc contends that § 506(b) cannot

---

**7.** A motion would also require the signing attorney to disclose his address, telephone number, and bar admission number.

**8.** Because of the congressional policy of equity of distribution, H.R.Rep. No. 595, 95th Cong. 1st Sess. 177–78 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6138, allowing fees to a particular creditor is the exception and not the norm in a bankruptcy case. Such fee requests are to be strictly construed, and the burden is on the creditor to show entitlement and reasonableness. *In re Cuisinarts, Inc.*, 115 B.R. 744 (1990).

give rise to an independent cause of action. If the Defendant is correct, the Complaint does not contain valid claims. The Plaintiffs, on the other hand, argue that Code § 105, which allows the bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate" to carry out the provisions of Title 11, authorizes the relief they request.

After reviewing the scope of its power under § 105, the Court agrees with the Plaintiffs and concludes that not only have they set forth cognizable claims, but also that the Court may order restitution of the disputed charges and sanctions.

 Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This section assures bankruptcy courts the power to take whatever action is necessary to aid in the exercise of their jurisdiction. 2 Lawrence P. King, *Collier on Bankruptcy,* ¶ 105.01 at 105–5 (15th ed. rev.1999). The courts have exercised the grant of authority under § 105(a) in a wide variety of situations. *See, e.g., Arnold v. Stevenson Credit Union,* 206 B.R. 560 (Bkrtcy. N.D.Ala.1997) (awarding damages for violations of § 524); *Willis v. Celotex Corp.,* 978 F.2d 146 (4th Cir.1992) (upholding stay of proceedings against third-party sureties to enforce payment of supersedes bonds); *In re Lykes Bros. S.S. Co., Inc.,* 191 B.R.

935 (Bankr.M.D.Fla.1995) (enjoining creditors with international operations from transferring claims to foreign entities to avoid personal jurisdiction of court).

 Despite the breadth of language in § 105, *see In re Hardy,* 97 F.3d 1384, 1389 (11th Cir.1996) ("[t]he language of § 105 encompasses any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code"), the Court's authority is not without limitation. The statutory language itself uses the term "provisions" and not the term "purposes" in describing the courts' power to effect the Code. This choice of terminology suggests that an exercise of § 105 must be linked to a specific Code section, and not merely to a general objective of the bankruptcy process.

 The Fourth Circuit has held that "while the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Committee of Equity Security Holders v. Mabey,* 832 F.2d 299, 303 (4th Cir.1987). The Supreme Court has likewise held that "[u]nder this section, a court may exercise its equitable power only as a means to fulfill some specific Code provision." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

 NationsBanc asserts that the statutory language does not expressly create a legal remedy under § 506(b), and that a cause of action cannot be implied under the four-factor analysis first set out in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[9] By allowing the Plain-

---

**9.** The factors to be considered in determining whether a private cause of action may be implied from a federal statute are (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to provide a private remedy; (3) whether a private remedy would be consistent with the underlying purpose of the statutory scheme; and (4) whether the cause of action is typically left to state law. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 23–24, 100

tiffs' lawsuit to go forward, NationsBanc contends the Court is creating substantive rights that are otherwise unavailable under the Code. This, the bank argues, is beyond the scope of the Court's authority under § 105.

This is patent nonsense. NationsBanc's argument ignores the rights and duties imposed by the interplay of Code § 506 and Bankruptcy Rule 2016. A bankruptcy filing creates an estate comprised of all of a debtor's property. 11 U.S.C. § 541. In Chapter 13 cases, estate property also includes the debtor's postpetition income, which in almost all instances serves to fund the plan payments. These funds are distributed to creditors through the trustee pursuant to the debtor's payment plan. By statute, the Court has exclusive jurisdiction over a debtor's case and over all estate property, as well as over the debtor's plan. 28 U.S.C. § 1334(e); 28 U.S.C. § 157(a).

As noted above, § 506(b) authorizes the payment of attorney fees to a creditor from estate assets when certain conditions are met. In asserting claims, and in obtaining these payments, NationsBanc took advantage of this statutory system. However, Rule 2016 also places an affirmative duty on creditors who are seeking payment to file the requisite fee application. If a bankruptcy court cannot order disgorgement of monies improperly obtained from a debtor's estate, it cannot enforce these intertwined provisions.

NationsBanc also maintains the Plaintiffs have no remedy under the Code by repeating its argument that they failed to object to the lender's proofs of claim under § 502 and Bankruptcy Rule 3007. These provisions mandate that a claim is "deemed allowed" unless timely objected to by a party in interest. Therefore, De-

fendant argues it is automatically entitled to payment of the Attorney Fee absent such an objection. However, as noted above, this stands bankruptcy law on its ear and upsets the careful balance of competing interests set forth in the Code. To do so places the burden of proof and the costs of action in fee disputes on the debtor (or other objecting party), rather than on the creditor seeking payment.

■ The Court will not allow the Defendant to turn the Bankruptcy Code upon itself in this fashion. Without determining the existence of an express or implied cause of action, the Court recognizes that § 506(b) and Rule 2016 create rights *and* duties for creditors in bankruptcy cases. A creditor may be entitled to payment of professional fees under its contract with a debtor, but before those funds will be paid from the bankruptcy estate, the creditor must affirmatively demonstrate their reasonableness to the court after notice. If a creditor elects to ignore the law to obtain such fees, it is well within the Court's authority under § 105 to rectify that error.

■ Furthermore, the relief sought by the Plaintiffs—restitution of fees actually paid to NationsBanc by the class members—is nothing more than an equitable remedy necessary to preserve the benefits and burdens established in § 506 and Rule 2016. Under § 105, this Court has the power to grant restitution to effectuate those sections when, as here, a creditor has collected money from the estate on improperly filed claims. *Cf. Simmons v. Ford Motor Credit Co. (In re Simmons)*, 224 B.R. 879, 884 (Bankr.N.D.Ill.) (finding

S.Ct. 242, 249, 62 L.Ed.2d 146 (1979) (emphasizing congressional intent factor).

However, this analysis is inapplicable in the present case. The Bankruptcy Code does not reserve limited remedies for particular administrative bodies or types of plaintiffs. Rather, the Code grants bankruptcy courts

equitable power to enter whatever orders are necessary to effect its provisions—within the limitations set forth in cases such as *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) and *Committee of Equity Security Holders v. Mabey*, 832 F.2d 299 (4th Cir.1987).

that Bankruptcy Code did not impose a duty on creditor to obtain appraisal of collateral for valuation in proof of claim).[10]

 NationsBanc points out that the Plaintiffs do not specifically assert a cause of action under § 105 in their Complaint. The Plaintiffs' first three claims are couched in terms of § 506 rather than § 105. However, a complaint need only provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1227 (1998) (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under well recognized principles of notice pleading, the Complaint sets forth sufficient facts to notify the Defendant that Plaintiffs seek restitution for payment of improperly claimed professional fees. No one could mistake the basis of this action—NationsBanc collected fees from the Plaintiffs that were not approved under § 506. The Plaintiffs want the money back.[11]

In summary, § 105 authorizes the Court to take whatever action is necessary to enforce the Code's provisions. The bankruptcy court is entitled to exercise its powers under the Code to restrain a creditor from overreaching. To do otherwise would allow NationsBanc to perpetrate a fraud on the Court and other parties in interest. In the present case, the Attorney Fee claimed by NationsBanc has been found unreasonable under § 506 and violative of Bankruptcy Rule 2016. Therefore, the Court finds the equitable remedy of restitution appropriate and grants summary judgment for the Plaintiffs on this issue.

 The Court also finds that the Plaintiffs are entitled to recover their actual damages, including attorney's fees, from the Defendant. This case presents novel issues with few obvious answers. Nevertheless, it is clear the Defendant failed to comply with the Bankruptcy Code and Rules. On summary judgment, the Court makes no findings as to whether the Defendant's actions were wrongful or malicious, or as to whether punitive damages are warranted. These are factual issues. However, the Court does conclude as a matter of law that the Plaintiffs should not bear the costs of forcing NationsBanc to comply with § 506 and Bankruptcy Rule 2016. The factual issues of the precise amount of damages owed and whether sanctions are appropriate are therefore reserved for a later date.

### E. Moot Claims

The Court's prior rulings and the stipulations of the parties in this matter render the Plaintiffs' second, third, and fourth claims moot. In the Plaintiffs' first claim for relief, the Court found the Attorney Fee unreasonable under § 506. Therefore, the Court need not consider the Plaintiffs' second claim for relief, alleging the fee is unreasonable because the terms of the Tate and Ballard Deeds of Trust do not provide for it.

Plaintiffs' third claim seeks injunctive relief and a declaratory judgment that the Defendant's conduct violates the Bankruptcy Code. The Court has already determined that the Attorney Fee violates § 506 and Bankruptcy Rule 2016. Furthermore, this Order is enforceable, if necessary, through the Court's contempt power. Fed.R.Bankr.P. 9020. Thus, the third

---

**10.** A ruling that the Court lacks power to order disgorgement under § 105 to enforce other provisions of the Code is also inconsistent with cases related to oversight of professional fees. These opinions conclude that bankruptcy courts may invoke § 105(a) to order disgorgement of fees that are obtained in violation of § 328 governing compensation of professionals. See, *e.g.*, *In re Kids Creek Partners*, 219 B.R. 1020, 1022 (Bankr.N.D.Ill. 1998), aff'd on other grounds, 200 F.3d 1070 (7th Cir.2000); *In re Metropolitan Elec. Supply Corp.*, 185 B.R. 505 (Bkrtcy.E.D.Va.1995); *In re Kearing*, 170 B.R. 1, 7 (Bankr.D.D.C. 1994). Like § 506, § 328 does not include specifically authorize disgorgement. Nevertheless courts have appropriately found authority to do so in § 105(a).

**11.** Actually, the disgorged funds are estate property and will be applied to other creditors' claims.

cause of action is rendered unnecessary and duplicative.

Finally, Plaintiffs' fourth claim seeks relief under the Truth–in–Lending Act, 15 U.S.C. §§ 1601 *et seq.*, and its implementing regulations found in Federal Reserve Board Regulation Z, 12 C.F.R. pt. 226. Plaintiffs concede that Defendant is entitled to summary judgment on this claim. Plaintiff's Memo. at 2. NationsBanc is therefore entitled to judgment as a matter of law with regard to each of these claims.

### F. Preemption

■ Plaintiffs' fifth cause of action alleges that the filing of each proof of claim containing the Attorney Fee violated the North Carolina Fair Debt Collection Practices Act, N.C.Gen.Stat. §§ 75–50 to 75–56. The sixth and final cause of action asserts that the proofs of claim also violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat. §§ 75–1 to 75–35. The Court finds that in the present procedural context—that is, in determining the proper procedure to assert a creditor claim for attorney's fees against a bankruptcy estate—these state law causes of action are preempted by federal law.

■ The doctrine of preemption is grounded in the Supremacy Clause of the United States Constitution, which states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, § 2. Thus, federal legislation, if constitutionally enacted by Congress, can supplant or nullify conflicting state and local law.

In *Worm v. American Cyanamid Co.*, 970 F.2d 1301 (4th Cir.1992), the Fourth Circuit Court of Appeals described the two basic types of preemption, field preemption and conflict preemption, as follows:

Preemption may occur on two bases, the first of which turns on discovering the intent of Congress. Congress may expressly provide that federal law supplants state authority in a particular field or its intent to do so may be inferred from its regulating so pervasively in the field as not to leave sufficient vacancy within which any state can act. But even absent an express or implied congressional intent to preempt state authority in a field, state law is nevertheless preempted by operation of law to the extent that it actually conflicts with federal law.

*Id.* at 1304. The Fourth Circuit went on to state that when determining whether preemption occurs due to a conflict with federal law, a court must consider whether " 'it is impossible to comply with both state and federal law,' " or whether " 'state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law.' " *Id.* at 1306 (citing *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)).

■ It would be too broad to say that these state laws are entirely preempted from the field of bankruptcy. Federal bankruptcy preempts state law, but only to the extent that there is an actual conflict between the two. *Stellwagen v. Clum*, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918); *Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990); *Johnson v. First Nat'l Bank*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) In fact, the Bankruptcy Code borrows liberally from state law in many areas.

The existence of creditors' rights in bankruptcy are determined by state law, as are the extent of a debtor's interest in property of the estate and, in many cases, the exemptions which debtors are entitled to claim. *See Monts*, 906 F.2d at 1475 (citing cases); 11 U.S.C. § 522(b). Given the frequent intersection of state and federal law within bankruptcy, there is no

express or implied basis to find that Congress intended to occupy the entire field.

Even in the context of conflict preemption, compliance with the Bankruptcy Code's professional fee application procedures and state statutes regulating debt collection and/or deceptive trade practices is not per se impossible. A creditor can obviously file a Rule 2016 fee application without committing the sort of false representations and unconscionable acts such state laws are designed to eliminate. Thus, the first subcategory of conflict preemption does not pose a problem for the Plaintiffs.

■■■■■ However, the Plaintiffs' state claims are preempted in this particular context, because they stand as obstacles to the accomplishment of the full purposes and objectives of federal bankruptcy law. The Court is mindful that in our joint federal-state system of government the courts must exercise caution in declaring that federal statutes preempt state acts. *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). But it is also true that there are areas of uniquely federal interest where state law cannot interfere. *See Public Service Co. of New Hampshire v. State of New Hampshire*, 108 B.R. 854, 881–82, 885–86 (Bankr. N.H.1989) (discussing areas of unique federal interest and obstacle preemption); *See also Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (finding state law that frustrated purpose of Bankruptcy Act preempted).

■■■■ The Plaintiffs' alleged state law causes of action are based on the Defendant's choice of process in a federal court proceeding—filing a proof of claim versus a fee application. These procedures are found in the Code and Part III of the Bankruptcy Rules and are an area of uniquely federal concern. The United States Constitution grants Congress, and Congress alone, the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. Art. I, § 8. While bankruptcy may draw on state law to define substantive property rights, the bankruptcy process itself is solely a creation of federal legislation. The superimposition of state remedies by the Plaintiffs, which is in effect an attempt to regulate bankruptcy procedural law, undercuts the constitutional concern with uniform bankruptcy case administration. *See MSR Exploration. Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir.1996) (finding state law malicious prosecution claim preempted in bankruptcy). The Plaintiffs fifth and sixth causes of action are therefore in direct conflict with a central purpose of the Bankruptcy Code. As a result, the claims are preempted and the Defendant is entitled to summary judgment on this issue.

### G. Res Judicata

■■■■ Finally, NationsBanc argues that all of the Plaintiffs' claims are barred by res judicata. Under res judicata principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication.[12] The doctrine occurs when three conditions are met: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical or in privity in the two actions; and 3) the claims in the second

---

12. The res judicata doctrine actually encompasses two concepts: claim preclusion and issue preclusion (or collateral estoppel). Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.

Issue preclusion is more narrow and applies when the later litigation arises from a different cause of action. It operates to bar subsequent litigation of those legal and factual issues common to both actions that were actually and necessarily determined in the first litigation. *Varat Enterprises*, 81 F.3d at 1314–15.

matter are based upon the same cause of action involved in the earlier proceeding. *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.),* 81 F.3d 1310, 1315 (4th Cir.1996).

■■■ While it is well settled that res judicata applies in bankruptcy, *id.,* the Court finds that the doctrine will not operate to bar Plaintiffs claims in this instance. The Defendant maintains that this district's 1991 Claim Allowance Order, together with the Plaintiffs' failure to object to the NationsBanc proof of claim, constitutes a final judgment for purposes of res judicata. The Court is aware of no precedent to this effect. Furthermore, there is no preclusive force when predicate steps required by the Code and Bankruptcy Rules are not satisfied with regard to a particular order. *See Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995); *Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160 (4th Cir.1993).

As previously noted, an essential procedural requirement for allowance of professional fees was not followed in this case: NationsBanc included the Attorney Fee in its proof of claim form without filing a fee application as required by Bankruptcy Rule 2016. Therefore, the allowance of NationsBanc's claim is not res judicata as to the Plaintiffs' claims.

Furthermore, since NationsBanc did not file a Rule 2016 fee application, and this Court has not been given the opportunity to determine the reasonableness of the claimed fee as required by § 506, it cannot be said that the allowance of the fee was adjudicated on the merits.

Lastly, the court's treatment of a creditor claim is never truly a final judgment. The Code clearly states that an allowed or disallowed claim may be reconsidered at any time for cause. 11 U.S.C. § 502(j); Fed.R.Bankr.P. 9024. Cause is demonstrated here on these facts. For each of these reasons, the first requirement of the res judicata doctrine (that the prior judgment be final and on the merits) has not been satisfied. Therefore, the Plaintiffs' claims are not barred on this basis.

## CONCLUSION

Based on the foregoing, the parties' motions for summary judgment are **GRANTED IN PART and DENIED IN PART** as follows:

The Plaintiffs' motion for summary judgment is granted as to their first claim for relief, alleging that the Attorney Fee is unreasonable under 11 U.S.C. § 506. The Plaintiffs are therefore entitled to restitution of the Attorney Fee from the Defendant in each class member's case. Additionally, the Plaintiffs' actual damages, including an award of attorney's fees, shall be taxed to the Defendant. The issues of the amount of damages owed and whether sanctions are appropriate are reserved for a later date. Except as provided herein, the Plaintiffs' motion for summary judgment is denied.

The Defendant's motion for summary judgment is granted as to the Plaintiffs' second, third, fourth, fifth, and sixth claims for relief. Except as provided herein, the Defendant's motion for summary judgment is denied.

**SO ORDERED.**